IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIA C. GARCIA,

       Plaintiff,

vs.                                           No. CIV 09-0203 RB/RHS

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,

       Defendant.

MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's (UNM's) Motion for Summary Judgment (Doc. 53), filed on February 22, 2010. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions and arguments of counsel, record, relevant law, and being otherwise fully advised, the Court grants summary judgment in favor of UNM.

I.    **Background.**

On February 27, 2009, Plaintiff (Ms. Garcia) filed suit in this Court, alleging: (1) gender discrimination and pregnancy discrimination in violation of the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-7(A), *et seq.* (NMHRA); (2) retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2602-2654 (FMLA); and (3) gender discrimination and pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f) (Title VII).

UNM has moved for summary judgment on all claims. With respect to the gender discrimination and pregnancy discrimination claims, UNM argues that Ms. Garcia cannot establish a prima facie case because the alleged discriminatory acts do not qualify as adverse employment actions. With respect to the FMLA retaliation claim, UNM contends that Ms. Garcia cannot

establish a prima facie case because the alleged retaliatory acts do not rise to the level of materially adverse actions.

## II.    Standard.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Turner v. Pub. Serv. Co. of Colo*., 563 F.3d 1136, 1142 (10th Cir. 2009).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003).  If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that, on summary judgment, the plaintiff can "no longer rest on the pleadings")).

The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its

burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Although "[t]he burden of showing the absence of a genuine issue of material fact . . . is upon the movant," *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005), the nonmovant " 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Summary judgment is appropriate unless the nonmoving party makes a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006) (internal quotations omitted). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## III.   Statement of Facts.

On summary judgment, the Court must view the facts in a light most favorable to Ms. Garcia, the non-moving party. *See Turner*, 563 F.3d at 1142. Thus, reasonable inferences are drawn and factual ambiguities are resolved in Ms. Garcia's favor.

Ms. Garcia, a UNM graduate, was employed by UNM from 1998 until she resigned on April 1, 2008. (Pl. Ex. B, Declaration of Maria C. Garcia ¶ 1.) From January 2006 through March 2008, Ms. Garcia served as the Branch/Division Human Resources Representative for the UNM

Continuing Education Department.  (Garcia Decl. ¶ 2.)  In this full-time, salaried position, Ms. Garcia administered human resources services for a major branch of UNM, provided strategic and administrative advice and service to faculty and staff regarding human resources issues, developed human resources procedures in accordance with UNM policies, participated in operational decision-making, and acted as the primary liaison with UNM's central human resources office.  (Am. Compl. ¶ 11; Garcia Decl. ¶ 2.)  Ms. Garcia received an overall rating of Exceeds Expectations for her 2006 performance review.  (Pl. Ex. A, Deposition of Maria Cruzita Garcia at 34.)

Until July 30, 2007, Ms. Garcia was supervised by Dr. Rita Martinez-Purson, Dean of Continuing Education at UNM.  (Def. Ex. B, Affidavit of Joseph Miera, Ex. 3; Garcia Decl., Ex. 3.) After July 30, 2007, Joseph Miera, Associate Dean for Operations, was Ms. Garcia's direct supervisor.  (Def. Ex. B, Affidavit of Joseph Miera.)

On August 28, 2007, Ms. Garcia informed Dean Miera that she was pregnant and intended to take FMLA leave for the birth of her baby.  (Am. Compl. ¶ 16; Miera Aff. ¶ 3.)

On September 17, 2007, Dean Miera issued, and required Ms. Garcia to sign, a counseling letter, dated September 14, 2007, that addressed Ms. Garcia's performance and attendance.  (Letter from Joe Miera to Maria Cruzita Garcia, dated Sept. 14, 2007, attached to Miera Aff. as Ex. 1.)  The counseling letter discussed Ms. Garcia's absences from work and Dean Miera's concerns about the impact of Ms. Garcia's absenteeism.  (*Id*.)

In the counseling letter, Dean Miera stated that, in June and July 2007, Dean Martinez-Purson conducted at least two coaching sessions with Ms. Garcia regarding Dean Martinez-Purson's concerns about Ms. Garcia's increasing absenteeism.  (Letter of Sept. 14, 2007.)  According to the counseling letter, the coaching sessions occurred in person on June 25, 2007, and by telephone on

July 30, 2007.  (*Id.*)  In her deposition, Ms. Garcia testified that she did not recall the coaching sessions and she did not have any problems with absenteeism prior to her pregnancy.  (Garcia Dep. at 33; 35-36; and 96-97.)

The counseling letter required Ms. Garcia to comply with UNM leave policies, directed her to improve her responsiveness to staff requests, and to eliminate a backlog in her workload.  (Letter of Sept. 14, 2007.)  With regard to leave, the counseling letter required Ms. Garcia to request annual leave five working days in advance of utilization, to request sick leave three days in advance when practical, and to submit doctor's notes[1] to substantiate all future sick leave requests.  (*Id.*)

UNM asserts that Ms. Garcia took 203.5 hours of annual leave and 174.5 hours of sick leave in the thirteen-month period prior to August 14, 2007.  (Pretrial Order at 3.)  All of these hours were approved by Ms. Garcia's supervisors.  (*Id.*)  During the same period, at least three other employees in the Continuing Education Department used significant amounts of annual and/or sick leave comparable to the amounts of leave that Ms. Garcia used.  (Garcia Decl. ¶ 3, Ex. 3; Pretrial Order at 3.)  These other employees were not disciplined, counseled, or given any additional workplace performance requirements for their use of leave.  (Garcia Decl. ¶ 3.)

The counseling letter required Ms. Garcia to meet with Dean Miera for thirteen weekly coaching sessions[2] "to assess [her] progress and review strategies for the following week."  (*Id.*)  Additionally, the counseling letter contained personal information concerning Ms. Garcia, including

---

[1] UNM policies and procedures relating to sick leave provide that UNM "reserves the right to require a physician's statements at any time regarding an employee's illness or injury."  (Miera Aff. ¶ 9, Ex. 2.)  The Continuing Education Division required at least one other employee, a woman who was not pregnant, to provide doctor's notes to support her sick leave requests.  (Garcia Dep. at 47.)

[2] Ms. Garcia has averred that only two such meetings took place as Dean Miera expressed satisfaction with Ms. Garcia's job performance.  (Am. Compl. ¶ 21.)

5

that her ex-boyfriend was stalking her and she was in jail the previous weekend.  (Letter of Sept. 14, 2007.)  According to Ms. Garcia, the counseling letter is kept by the UNM Human Resources Department as employee relations documentation.  (Garcia Decl. ¶ 7.)  In Ms. Garcia's opinion, such documentation would be consulted by hiring officials when UNM employees seek to apply for or transfer to a job within the Human Resources Department.  (Garcia Decl. ¶ 8.)  In Ms. Garcia's opinion, the personal information in the counseling letter would effectively disqualify Ms. Garcia from future employment at UNM, or would be an extremely negative factor to a prospective hiring official.  (*Id.*)

Additionally, beginning in November 2007, Dean Miera required Ms. Garcia to check in and out of the workplace via email.  (Miera Aff. ¶ 8.)  In February 2008, Dean Miera reiterated his request that Ms. Garcia check in and out of the work place via email, and asked Ms. Garcia to provide him with a weekly log of the tasks she had accomplished.  (Miera Aff. ¶ 10.)  Subsequently, Ms. Garcia was required to provide a daily log of the work she had performed.  (*Id.*; Garcia Dep. at 95.)

During a meeting in February 2008, Ms. Garcia informed Dean Miera that she intended to submit her FMLA leave request very soon.  (Am. Compl. ¶ 23.)  Ms. Garcia's FMLA leave was approved for March 17, 2008-June 9, 2008.  (Am. Compl. ¶ 24.)

After she announced her intention to take FMLA leave, Dean Miera informed Ms. Garcia that her full-time position would most likely be reduced to a part-time position when she returned from FMLA leave.  (Garcia Dep. at 136-37; 138; 146-47.)  Ms. Garcia testified, in her deposition, that in order for a position to be changed from full-time to part-time, the employee in the position would have to agree to the change.  (Garcia Dep. at 260.)  Additionally, Ms. Garcia testified, in her

deposition, that Dean Miera would "most likely" need her approval to change her position from full-time to part-time, and that she did not give such approval. (Garcia Dep. at 261.)

On March 14, 2008, Ms. Garcia received her performance review for 2007. (Miera Aff. ¶ 11, Ex. 3.)  The review was signed by Dean Miera, and it listed both Dean Miera and Dean Martinez-Purson as reviewing supervisors. (Miera Aff. Ex. 3.)  In the employee comments section of the performance review, Ms. Garcia acknowledged that there were many times during 2007 that she "had to address personal issues and situations that took away from [her] ability to be 100% committed to [her] professional obligations."  (*Id*.)  The supervisors' supporting comments discussed the requirements that Ms. Garcia check into and out of the workplace via email, provide weekly task lists, and document sick leave requests.  (*Id*.)  The supervisors described these requirements as a means to "achieve and maintain better accountability."  (*Id*.)  The supervisors concluded that "[w]hile Ms. Garcia has had her personal challenges this year, she has worked to provide accountability and productivity and therefore . . . a rating of Meets Expectations is appropriate for 2007."  (*Id*.)  The overall tone of the review was positive. (*Id*.)

On March 17, 2008, Ms. Garcia began her FMLA leave.  (Miera Aff. ¶ 12.)  On March 31, 2008, UNM overpaid Ms. Garcia.  (Garcia Decl. Ex. 10.)  The overpayment was based on either a coding error that categorized the FMLA leave as catastrophic leave, (Miera Aff. ¶¶ 13-14), or on an erroneous assumption that she had worked the entire month.  (Garcia Decl. ¶ 10.)  In any event, Ms. Garcia was paid approximately $2,556, when she should have been paid approximately $1,300 for her work during the period of March 1-16, 2008.  (*Id*.)

UNM directed Ms. Garcia's bank to return the entire amount of the direct deposit.  (*Id.*)  As a result, Ms. Garcia incurred two non-sufficient funds charges.  (*Id*.)  When it rescinded the entire

deposit, it began to process the correct amount.  (Miera Aff. ¶ 14.)  Within four days, Ms. Garcia received the correct payment.  (*Id.*)  The direct deposit agreement between UNM and Ms. Garcia authorized UNM to direct her bank to return funds to which she was not entitled. (Garcia Decl., Ex. 5.)

On April 1, 2008, Ms. Garcia resigned her position with UNM.  (Miera Aff. ¶ 15, Ex. 4.) At the time she resigned, Ms. Garcia was a full-time employee and her salary was approximately $42,500 per year.  (Garcia Decl. ¶ 9.)  A copy of a budget report for 2008-09 dated May 20, 2008, shows Ms. Garcia's position with a funding level of 50%, or $21,278.  (Garcia Decl., Ex. 3.)

## IV.   Discussion.

### A.    Ms. Garcia has not established a prima facie case of pregnancy discrimination or gender discrimination within the meaning of Title VII or the NMHRA.

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of sex.  *See* 42 U.S.C. § 2000e-2(a)(1).  In 1978, Congress amended Title VII with the Pregnancy Discrimination Act thereby expanding the definition of what constituted discrimination "on the basis of sex" to include discrimination "on the basis of pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. § 2000e(k).  A pregnancy discrimination claim is analyzed much the same way as other Title VII claims of disparate treatment.  *Orr v. City of Albuquerque*, 531 F.3d 1210, 1214 (10th Cir. 2008).  Indeed, Ms. Garcia acknowledges that her pregnancy discrimination claim is based on the same evidence as her gender discrimination claim.  (Doc. 59 at 12.)

Where, as here, the plaintiff does not offer direct evidence of discrimination, but instead relies on circumstantial evidence, the claims are analyzed under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Fye v. Okla.*

8

*Corp. Comm'n,* 516 F.3d 1217, 1225 (10th Cir. 2008).  *McDonnell Douglas* provides that, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action.  *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008).  If the defendant meets its burden of production by offering a legitimate rationale in support of its action, the burden shifts back again to the plaintiff to show that the defendant's proffered reason was a pretext for discrimination or retaliation.  *Id.*

The New Mexico Supreme Court has adopted the *McDonnell Douglas* paradigm for claims of unlawful discrimination under the New Mexico Human Rights Act.  *Juneau v. Intel Corp.*, 139 N.M. 12, 15, 127 P.3d 548, 551 (2005).  Thus, the Title VII analysis applies to Ms. Garcia's NMHRA pregnancy discrimination and gender discrimination claims.

Ms. Garcia relies on the same circumstantial evidence with respect to both the pregnancy discrimination and gender discrimination claims.  Thus, all the discrimination claims are subject to the *McDonnell Douglas* framework.

In order to establish a prima facie case of gender discrimination or pregnancy discrimination within this framework, Ms. Garcia must show that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.  *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (discussing elements of the prima facie case)).

UNM contends that Ms. Garcia is unable to establish the second element of the prima facie case of discrimination.  In light of Title VII's remedial purpose, the Tenth Circuit liberally construes what qualifies as an adverse employment action.  *Orr*, 417 F.3d at 1149.  At the same time, "mere

inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action for purposes of disparate treatment discrimination claims.  *Piercy v. Maketa*, 480 F.3d at 1203.

"[T]he substantive discrimination provisions of Title VII are limited 'to [adverse] actions that affect employment or alter the conditions of the workplace.' " *Id.*, 480 F.3d at 1203 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)).  An adverse employment action consists of "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003).  The Tenth Circuit employs "a case-by-case approach, examining the unique factors relevant to the situation at hand." *Haynes v. Level 3 Comms., LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).

Ms. Garcia relies on the following factors to establish an adverse employment action: (1) the counseling letter; (2) the requirement that she submit a doctor's note for a sick leave request; (3) the weekly meetings with her supervisor; (4) the requirement that she check into and out of the workplace; (5) the requirement that she provide work logs; (6) the delay in receipt of her correct salary; and (7) the alleged threats to reduce her full-time position to a part-time position.

The counseling letter addressed perceived deficiencies in Ms. Garcia's attendance and work performance and set out a plan for improvement.  The Tenth Circuit has held that placement of an employee on a performance improvement plan, standing alone, is not an adverse employment action. *Haynes*, 456 F.3d at 1224.  "A written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status."  *Id*.  Notably, courts have recognized that "formal criticism or poor performance evaluations are not necessarily adverse

10

actions and they should not be considered such if they did not affect the employee's grade or salary."
*Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).

In this case, the counseling letter had no effect on Ms. Garcia's employment status. She continued as the Branch/Division Human Resources Representative for the Continuing Education Department and her salary was unchanged. While the counseling letter criticized her attendance and work performance, the overall purpose of the letter was to improve her performance. Ms. Garcia has produced no evidence indicating that her job was in jeopardy as a result of the counseling letter. Similar to the plaintiffs in *Haynes* and *Taylor*, Ms. Garcia was not demoted, her pay was not changed, and her job responsibilities were not significantly modified. Because it did not result in a significant change in her employment status, the counseling letter does not rise to the level of an adverse employment action.

Ms. Garcia speculates that the personal information contained in the counseling letter would preclude her from future employment at UNM. However, Ms. Garcia has produced no evidence that the counseling letter actually affected any employment application that she actually submitted. *See Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1238 (10th Cir. 2002) (holding a plaintiff must produce evidence showing that he actually applied for employment). In that Ms. Garcia has not shown that the counseling letter has affected an employment application at UNM, she has not shown that it constitutes an adverse employment action.

The letter required Ms. Garcia to submit a doctor's note to substantiate future sick leave requests. The Tenth Circuit has expressly held that such a requirement does not qualify as an adverse employment action. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998). Because this practice was authorized by written UNM policy and imposed on at least one other

employee in the Continuing Education Department, the third element of the prima facie case is not met with regard to this requirement.  The weekly meetings with her supervisor were similarly innocuous.  *See Hobbs v. City of Chicago*, 573 F.3d 454, 463-64 (7th Cir. 2009) ("A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities.").  The requirements regarding the doctor's notes and weekly meetings do not qualify as adverse employment actions.

The requirement, imposed in November 2007, that Ms. Garcia check into and out of the workplace does not qualify as adverse employment action.  *Sharon v. Yellow Freight Sys., Inc.*, 872 F.Supp. 839, 847 (D. Kan. 1994).  It is common knowledge that many employees must sign in and out of the workplace, or otherwise keep a record of their attendance.  Similarly, the weekly or daily work logs are not cognizable as an adverse employment action.  *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (holding that requiring plaintiff to submit regular status reports was a "minor inconvenience," not a materially adverse employment action sufficient to support a claim of retaliation).  Such minor inconveniences fall far short of adverse employment actions.

The four-day delay in the receipt of the correct paycheck is likewise insufficient.  Courts have held that a short delay in salary or overtime payment is an inconvenience, and not an adverse employment action.  *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004); *Gomez v. Laidlaw Transit, Inc.*, 455 F.Supp.2d 81, 89 (D. Conn. 2006).  In any event, Ms. Garcia does not dispute that, with regard to salary overpayments, it is UNM's custom to rescind the entire amount and redeposit the correct amount and the payroll office was responsible for the overpayment and withdrawal.  The direct deposit agreement between UNM and Ms. Garcia authorized UNM to direct her bank to return funds to which she was not entitled.  In that Ms. Garcia has offered no evidence

indicating that she was singled out due to her protected status, she has not established an inference of discrimination with respect to the delay in receipt of the correct salary deposit.

Ms. Garcia also relies on the alleged threats to reduce her full-time position to a part-time position.  Ms. Garcia testified, in her deposition, that in order for a position to be changed from full-time to part-time, the employee in the position would have to agree to the change and Dean Miera would "most likely" need her approval to change her position from full-time to part-time and she did not give such approval.  Ms. Garcia resigned her employment with UNM before her position was reclassified as part-time; that is, Ms. Garcia was no longer in the position when it was reclassified to part-time.

Unrealized threats of adverse employment actions do not constitute adverse employment actions.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) (unfulfilled threats not resulting in tangible employment action are actionable under Title VII only by means of a hostile work environment claim); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (observing that the Tenth Circuit has "never expressly held that an unrealized threat of termination, without more, constitutes an adverse employment action"); *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1381 (10th Cir. 1994) (holding that unrealized threats are not adverse employment actions).  Simply put, the alleged threats regarding the contemplated reclassification of Ms. Garcia's job do not constitute adverse employment action.

The job-related actions relied upon by Ms. Garcia, singly or in combination, do not qualify as adverse employment actions as a matter of law.  *See Stinnett*, 337 F.3d at 1217; *Piercy*, 480 F.3d at 1203; *Haynes*, 456 F.3d at 1222.  Construed in the light most favorable to Ms. Garcia, the record contains no evidence that Ms. Garcia suffered a significant change in her employment status during

the relevant period of time.  For this reason, Ms. Garcia has not established the second element of her prima facie case of discrimination.

If a plaintiff is unable to make out a prima facie case, judgment as a matter of law is appropriate.  *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001) (reversing district court's denial of a post-verdict motion for judgment as a matter of law where court held plaintiff did not suffer from an adverse employment action).  UNM is entitled to summary judgment on the Title VII and NMHRA claims for pregnancy discrimination and gender discrimination.

**B.     Ms. Garcia has not established a prima facie case of retaliation within the meaning of the FMLA.**

Retaliation claims under the FMLA are subject to the burden-shifting *McDonnell Douglas* analysis.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).  Under this framework, Ms. Garcia must first establish a prima facie case of retaliation.  *See Metzler*, 464 F.3d at 1171.  To establish a prima facie case of retaliation, Ms. Garcia must show that (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) there is a causal nexus between her opposition and the employer's adverse action.  *White*, 548 U.S. at 67-68; *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).

UNM contends that Ms. Garcia cannot establish the second prong of a prima facie case of retaliation.  More specifically, UNM asserts that Ms. Garcia is unable to demonstrate a materially adverse action.  In the context of a retaliation claim, a plaintiff must show the challenged action was materially adverse.  *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010).  Actions are materially adverse if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *White*, 548 U.S. at 57.  The standard

14

is objective, but it is phrased in "general terms because the significance of any given act of retaliation will often depend upon the particular circumstances." *White*, 548 U.S. at 69. Although *White* expanded the prohibitions on retaliation beyond "discriminatory actions that affect the terms and conditions of employment," it also emphasized that an individual is protected "not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 64, 68.

In support of her assertion that she was subject to a materially adverse action sufficient to establish the second element of a prima facie case of retaliation, Ms. Garcia relies on the counseling letter, the requirement that she submit doctor's notes for sick leave requests, the requirement that she attend weekly meetings with her supervisor, the requirement that she check into and out of the workplace via email, the requirement that she provide work logs, the delay in receiving the correct paycheck, and the unfulfilled threat to reduce her position to part-time when she returned from FLMA leave.

A counseling letter, without attendant effects on employment, is not a materially adverse action. *Cochise v. Salazar*, 601 F.Supp.2d 196, 201 (D. D.C. 2009). Notably, the counseling letter imposed requirements to improve attendance and job performance; it did not result in any negative effects inside or outside her employment. While Ms. Garcia speculates that the counseling letter might interfere with her future employment prospects at UNM, there is no evidence that she suffered any materially adverse consequences as a result of the letter. Indeed, her FLMA request was approved and she received a satisfactory evaluation a few days before she went on maternity leave. Under these circumstances, the counseling letter did not rise to the level of a materially adverse action.

Additionally, the requirements that Ms. Garcia produce doctor's notes to document sick

15

leave and check into and out of the workplace do not constitute a materially adverse actions as a matter of law.  "A restriction on tardy arrivals or a required doctor's note in the event of an unscheduled absence are conditions of employment known to workers everywhere; to impose them on the plaintiff does not constitute a materially adverse action." *Cole v. Powell*, 605 F.Supp.2d 20, 26 (D. D.C. 2009).

Neither the weekly meetings nor the work logs rise to the level of materially adverse actions. *Johnson*, 594 F.3d at 1216 (holding an employee's allegations that her supervisors gave her the "cold shoulder," sat farther away from her at meetings, became too busy to answer her questions, generally tried to avoid her, and urged her not to consult an attorney were insufficient to show materially adverse action); *Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F.Supp.2d 233, 252 (D. Conn. 2008) (holding requirement to attend weekly meetings did not reach the level of a materially adverse action).  While the requirements imposed on Ms. Garcia may have been "unpleasant and disturbing," they are legally insufficient to establish the second element of the prima facie case of retaliation. *Johnson*, 594 F.3d at 1216.  Similarly, the four-day delay in the receipt of the correct paycheck would not deter a reasonable employee from requesting FMLA leave. *See Siler v. Hancock County Bd. of Educ.*, 510 F.Supp.2d 1362, 1381 (M.D. Ga. 2007) (holding that four-day delay in receipt of paycheck is not a materially adverse action).

Finally, the threat to reduce her position to part-time was not materially adverse.  In assessing whether a threat qualifies as a materially adverse action, the employer's words and actions must be considered in context to determine whether they would dissuade a reasonable worker from asserting her rights. *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010).  Within the context of this case, Ms. Garcia knew that her position could not be reduced to part-time so long as she

16

remained in the position and she did not agree to the reduction.  Indeed, her position was not reduced to part-time while Ms. Garcia held it.  The unrealizable threat to reduce her position to part-time would not have dissuaded a reasonable worker in Ms. Garcia's position from asserting her rights under the FLMA.

Considered in the aggregate and viewed in the light most favorable to Ms. Garcia, the record contains no facts that would dissuade a reasonable worker from making or supporting a charge of discrimination.  Because the record contains no such evidence, Ms. Garcia is unable to establish a materially adverse action, which is the second element of a prima facie case of retaliation.  Where a plaintiff is unable to establish a prima facie case, judgment as a matter of law is appropriate. *See Aquilino*, 268 F.3d at 936.  UNM will be granted summary judgment on the FMLA retaliation claim.

## C.    The evidence would not support a claim of constructive discharge.

A plaintiff who resigned may satisfy the adverse employment action requirement by demonstrating that she was constructively discharged.  *Fischer*, 525 F.3d at 980.  The plaintiff's burden in establishing constructive discharge is substantial.  *Id.*  Constructive discharge occurs when an employer unlawfully creates "working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Id.*  Ms. Garcia has neither argued, nor presented evidence, that she was subjected to a constructive discharge.  Indeed, the record establishes that Ms. Garcia's FMLA request was approved, she received a satisfactory performance review approximately two weeks before she resigned, and she was on FMLA leave when she resigned.  Under these circumstances, the evidence would not support a claim of constructive discharge.

## V.    Conclusion.

The evidence, viewed in the aggregate and construed in the light most favorable to Ms.

Garcia, establishes that Ms. Garcia neither suffered an adverse employment action nor a materially adverse action. The evidence would not support a claim of constructive discharge. In that Ms. Garcia is unable to establish a prima facie case as to any of her claims, UNM is entitled to summary judgment on all claims.

 **THEREFORE**,

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. 53), filed on February 22, 2010, is **GRANTED**.

IT IS FURTHER ORDERED that a judgment in favor of Defendant and against Plaintiff shall issue forthwith.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**